In the

# United States Court of Appeals

## For the Seventh Circuit

No. 22-1217

BEACH FORWARDERS, INC.,

*Plaintiff-Appellee,*

*v.*

SERVICE BY AIR, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-56 — **Gary Feinerman**, *Judge.*

ARGUED OCTOBER 25, 2022 — DECIDED AUGUST 7, 2023

Before SYKES, *Chief Judge*, and FLAUM and LEE, *Circuit Judges*.

LEE, *Circuit Judge*. Service By Air, Inc., a shipping and logistics company, hired Beach Forwarders, Inc. as its exclusive agent in Virginia. After ten years, the relationship soured, and Beach Forwarders wanted out. Service By Air told Beach Forwarders it could not walk away without breaching their perpetual contract. Beach Forwarders thought differently and sought a declaratory judgment that it could and did lawfully

terminate the contract. The district court sided with Beach Forwarders and entered judgment on the pleadings, holding that the contract was terminable at will. We affirm.

**I.**

The parties entered into a service and agency agreement (Agreement) in 2010. The Agreement had a three-year term, a continuous one-year renewal option, and a mutual nonrenewal provision.

Because it does not impact the outcome, we assume, as did the district court, that the parties amended the Agreement in 2013. The amendment modified the Agreement to state that the Agreement would renew perpetually for consecutive one-year terms, unless Service By Air, in its sole discretion, notifies Beach Forwarders of its intention to terminate the Agreement thirty days prior to each annual expiration date.

The amendment, however, left untouched the following cure provision in the Agreement:

> **20. TERMINATION**
>
> A. SBA [Service By Air] shall not be deemed to be in default of this Agreement unless Agent [Beach Forwarders] has provided SBA written notice of an alleged material breach of this Agreement and provided SBA with at least thirty (30) days to correct such claimed breach or if the breach cannot be corrected within said thirty (30) days but SBA has provided Agent with evidence of its efforts to cure said breach, SBA shall be allowed time to cure said alleged breach which shall in no event be more than ninety (90) days after such notice. Upon

> expiration of said period Agent may terminate this Agreement effective ten (10) days after delivery to SBA of notice thereof. A termination of this Agreement by Agent for any other reason shall be deemed a termination by Agent without cause.

In August 2020, Beach Forwarders notified Service By Air that it believed that the Agreement, as amended, was terminable at will and that it wished to do so. By that time, Service By Air had been acquired by Radiant Logistics Inc., a shipping company. And Radiant's counsel responded that: (1) only Service By Air possessed the right not to renew, and (2) Beach Forwarders had not notified Service By Air of any material breach and, as such, Beach Forwarders could not terminate the Agreement.

## II.

Beach Forwarders sought a declaratory judgment on several points: first, that the Agreement, as amended, was terminable at will and had been terminated in a timely manner; and second, that the amendment was void, unenforceable, and subject to rescission. Beach Forwarders moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

In response, Service By Air conceded that the amended Agreement was of indefinite duration and that Illinois law presumes that such contracts are terminable at will. But, as Service By Air sees it, the presumption has been rebutted in this case, because the Agreement provided that Beach Forwarders could end the Agreement only if Service By Air failed to cure a material breach in a timely manner after notification.

The district court disagreed. It held that, even if it were to assume that the amendment was valid and enforceable, the unambiguous language of the Agreement established that it was terminable at will. Accordingly, the court granted a declaratory judgment on the pleadings that Beach Forwarders' termination of the Agreement was lawful.[1]

On appeal, Service By Air argues that the district court erred in granting judgment on the pleadings in Beach Forwarders' favor because the amendment and the cure provision created a factual issue that requires discovery to determine whether a perpetual contract exists. For its part, Beach Forwarders contends that Illinois Supreme Court and circuit precedent instruct that the revised Agreement is terminable at will, notwithstanding the cure provision.

### III.

We "review *de novo* the district court's interpretation of a written contract, including its conclusion that the contract was terminable at will." *Burford v. Acct. Prac. Sales, Inc.*, 786 F.3d 582, 585 (7th Cir. 2015), *overruled on other grounds by LHO Chi. River, L.L.C. v. Perillo*, 942 F.3d 384 (7th Cir. 2019). We may affirm on any basis supported by the record. *S. Branch LLC v. Commonwealth Edison Co.*, 46 F.4th 646, 649 (7th Cir. 2022).

The parties agree that, pursuant to the choice-of-law provision in the Amended Agreement, Illinois law governs. "[I]n Illinois, the construction, interpretation, or legal effect of a contract is a matter to be determined by the court as a question

---

[1] Although Service By Air asserts that Beach Forwarders did not seek a declaration that it had lawfully terminated the Agreement, Beach Forwarders sought a declaration that the Agreement was terminable at will and that it had terminated the Agreement in a timely manner.

of law." *Horne v. Elec. Eel Mfg. Co.*, 987 F.3d 704, 718 (7th Cir. 2021). "Under Illinois law, the goal of contract interpretation is to ascertain the parties' intent and, in doing so, we first look to 'the plain and ordinary meaning' of the contract language." *Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 267 (7th Cir. 2016) (quoting *Aeroground, Inc. v. CenterPoint Props. Tr.*, 738 F.3d 810, 813 (7th Cir. 2013)). We interpret the contract "as a whole, viewing each part in light of the others." *Aeroground*, 738 F.3d at 813 (cleaned up).

Turning our attention to the cure provision, we must read it in the context of the original Agreement, which was for a three-year term. During that term, neither party had discretion to terminate. There was a mutual nonrenewal provision at the end of the term, and, if the parties wished to continue the relationship beyond the set term, there was a one-year renewal provision. Within that framework, the cure provision was typical of an agency agreement with a fixed term. *See, e.g.*, *FMS, Inc. v. Volvo Constr. Equip. N. Am., Inc.*, 557 F.3d 758, 759 (7th Cir. 2009); *Morley-Murphy Co. v. Zenith Elecs. Corp.*, 142 F.3d 373, 375 (7th Cir. 1998).

But then the amended Agreement eliminated the fixed term and replaced it with language providing that the Agreement would renew automatically for an additional one-year term (presumably, without end) unless Service By Air stated otherwise. In so doing, the amendment triggered the application of Illinois law governing contracts of indefinite duration, which has long recognized that such contracts are presumptively terminable "at the will of the parties." *Jespersen v. Minn. Mining & Mfg. Co.*, 700 N.E.2d 1014, 1015 (Ill. 1998). That said, an agreement "without a fixed duration but which provides that it is terminable *only* for cause or upon the occurrence of a

specific event is … terminable only upon the occurrence of the specified event and not at will." *Id.* at 1016. Service By Air believes that the amended Agreement falls in the latter category; Beach Forwarders argues that Illinois's default rule should apply.

In analyzing this question, we first consider the Illinois Supreme Court's holding in *Jespersen*. There, a contract between a manufacturer and a distributor provided that the manufacturer "*may* … terminate this agreement for any of the[se] reasons": (a) "failure to reasonably promote [the company's] products"; (b) "breach of any term or condition of the agreement"; (c) "failure to make payment"; (d) the distributor's "death, bankruptcy, or insolvency"; or (e) the sale or transfer "of all or any part of the [d]istributor's rights under th[e] contract without the written approval and consent" of the manufacturer. *Id.* (emphasis added) (cleaned up). The court held that the term "may" is "permissive and equivocal" and, thus, the clear inference is that the enumerated "grounds are not the sole or exclusive basis for termination." *Id.* From this, it concluded that, "[w]here a contract is indefinite in duration, the delineation of instances of material breach in the context of a permissive and nonexclusive termination provision will not create a contract terminable for cause." *Id.* at 1017.

The upshot of *Jespersen* is that, under Illinois law, a contract without a set term is terminable at will, absent a clear statement that the contract can only be terminated based upon the occurrence of certain conditions or events. *Id.* at 1016–17; *see Baldwin Piano, Inc. v. Deutsche Wurlitzer GmbH*, 392 F.3d 881, 885 (7th Cir. 2004) ("The presumption of terminability allows separation in the business world, unless the parties clearly provide otherwise. It is the business equivalent

of no-fault divorce, with the possibility of covenant marriage if the parties make the necessary declarations."); *Burford*, 786 F.3d at 586 ("This presumption in favor of indefinite contracts being terminable at will can be overcome if the parties clearly agree to place limits on when termination may take place.").

*Baldwin Piano* presents the type of clear statement that *Jespersen* requires. There, a licensing agreement provided: "Except as herein provided, … this Agreement shall continue in force without limit of period but may be cancelled by the Licensor for material breach." 392 F.3d at 882. Although the provision used the word "may," we focused on the preceding clause and held that a material breach was "indispensable to cancellation" because "[a] phrase beginning 'except' implies that the following language limits the parties' options; otherwise it is a waste of ink and paper." *Id.* at 882–83.

*Burford* is another example. There, a corporation terminated its contract with its sales representative, and, when the sales representative sued, the company argued that the contract was of unlimited duration and presumptively terminable at will. 786 F.3d at 584–85. We held that the statement, "APS cannot terminate this agreement *unless it is violated by Burford*," was clear enough to overcome the presumption. *Id.* at 587. Distinguishing *Jespersen*, we explained: "There is a decisive difference between saying that A may terminate if B breaches and saying that A may terminate *only* if B breaches. Here, the difference is between reading a sentence out of a contract or not, and between the right to terminate at will or only for cause." *Id.* (cleaned up).

Additionally, Service By Air cites *Lichnovsky v. Ziebart International Corp.*, 324 N.W.2d 732 (Mich. 1982). In that case, a

franchise agreement provided it would remain in "full force and effect indefinitely, unless terminated at an earlier date should licensee fail to perform any of the terms, conditions or provisions of the agreement and remain in default for a period of 30 days after the receipt of a notice from Ziebart." *Id.* at 736 (cleaned up). The Supreme Court of Michigan held that "an agreement without a fixed term or duration but which provides nevertheless that *it is terminable only for cause* has indeed an indefinite term or duration, but a provision that the agreement continues unless terminated for cause is enforceable." *Id.* at 740 (emphasis added).

Pointing to the cure provision, Service By Air contends that the amended Agreement contains language just as clear as that used in *Baldwin Piano*, *Burford*, and *Lichnovsky*. We disagree. At best, when the contract is viewed as a whole, the language of the cure provision is vague and unclear.

The cure provision provides that Service By Air shall not be deemed to be in default unless Beach Forwarders has provided written notice of an alleged material breach and has given Service By Air an opportunity to cure, which under certain conditions may be extended up to ninety days. At the expiration of the ninety-day period, Beach Forwarders "may terminate this Agreement effective ten days after delivery to Service By Air of notice of termination." The last sentence reads: "A termination of this Agreement by [Beach Forwarders] for any other reason shall be deemed a termination without cause."

Conspicuously absent from this provision is any language of limitation or exclusivity, such as "except as herein provided" or "unless." Without it, the cure provision falls short of the requirement in *Jespersen* that the contract contain a clear

statement that a material breach is the sole or exclusive basis for termination by Beach Forwarders. In fact, the wording is permissive: Beach Forwarders "*may* terminate" the Agreement for cause. It also recognizes the possibility that Beach Forwarders might terminate the Agreement without cause. But nowhere does the Agreement expressly state that it can be terminated only for cause, nor does it impose a penalty for terminating without cause. Perhaps this lack of clarity might be forgiven in a contract with a definite duration (as this Agreement was originally). But it falls well short of the clear and specific language required by *Jespersen* now that the Agreement has no set end date.

For its part, Service By Air asks: Why have a cure provision at all if a party could just terminate for convenience? But there are myriad economic reasons why a terminable-at-will contract may contain a cure provision that guides the parties when one party thinks the other is in default.

For instance, the parties may wish to establish a procedure by which one party may obtain the other's compliance before cutting bait. Or the parties may prefer a set time frame to encourage compromise. Alternatively, the parties simply may want to promote the mitigation of damages. All of these concerns are particularly relevant where, as here, coordination between the parties is pivotal in order to provide seamless and cost-effective shipping services over an extended period. *See Baldwin*, 392 F.3d at 885 ("Because these long-term relations produce continuing profits for both sides, both have something to lose by taking the exit option without trying to work out differences first.").

All this to say, the amended Agreement lacks a clear statement that the contract can only be terminated based upon the

occurrence of certain conditions or events. Thus, Service By Air has not rebutted the presumption under Illinois law that this contract of indefinite duration is terminable at will. Because this issue is dispositive of the appeal, the district court's entry of judgment on the pleadings in Beach Forwarders' favor is AFFIRMED.